IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL FEIGENBAUM, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 1:12-CV-2605 |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Daniel Feigenbaum's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge AFFIRMS the final decision of the Commissioner.

### I.  PROCEDURAL HISTORY & PERSONAL BACKGROUND

Plaintiff Daniel Feigenbaum ("Plaintiff" or "Feigenbaum") filed an application for Supplemental Security Income benefits around November 24, 2008. (Tr. 22, 131). Feigenbaum alleged he became disabled on April 1, 2006 due to suffering from major depression with psychotic features, heart disease, bipolar disorder, high blood pressure, amblyopia, celiac, seizures, and irritable bowel syndrome. (Tr. 131, 161, 184). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 82-84, 89-95, 100-02).

1

At Feigenbaum's request (Tr. 96), administrative law judge ("ALJ") Dennis LeBlanc convened an administrative hearing on March 4, 2011 to evaluate his application. (Tr. 36-67). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Nancy Borgeson, and also appeared and testified. (*Id.*). On April 12, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 22-29). After applying the five-step sequential analysis,[1] the ALJ determined Feigenbaum retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 16). The Appeals Council denied the request for review, making the ALJ's April 12, 2011 determination the final decision of the Commissioner. (Tr. 1-4). Feigenbaum now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. § 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Feigenbaum was born on March 20, 1957, and was 33-years-old on the date his application was filed. (Tr. 125). Accordingly, he was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. § 416.963(c). Plaintiff earned a college degree in economics and had no work that qualified as past relevant work, though he performed some work as a high school substitute teacher. (Tr. 28, 43-44).

## II. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 24, 2008, the application date.

2. The claimant has the following severe impairments: bipolar disorder, asthma, obesity, hypertension, and a seizure disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except:

   - He can occasionally climb
   - He must avoid extreme conditions of cold, heat, wetness, humidity; and must avoid concentrated exposure to smoke fumes, dust, and gases
   - He must avoid hazards such as dangerous machinery or unprotected heights
   - He can understand, remember, and carry out simple and routine tasks that are not in a fast-paced production environment such as an assembly line, where interaction with co-workers would be superficial in nature and there would be no more than infrequent interaction with the public. This is defined as having job duties that do not require such interaction on a daily basis.

5. The claimant has no past relevant work.

6. The claimant was born on March 20, 1975 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

3

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 24, 2008, the date the application was filed.

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in

dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. Plaintiff's Treating Physician

Plaintiff argues that the ALJ violated the treating physician rule with respect to Matthew Vrabel, M.D., one of Plaintiff's psychiatrists at Murtis Taylor Mental Health Center. On April 26, 2010, Dr. Vrabel completed a Medical Source Statement addressing Plaintiff's mental capacity. (Tr. 603-04). In determining Feigenbaum's RFC, the ALJ gave "less weight" to Dr. Vrabel's 2010 opinion than he attributed to other medical sources. Plaintiff challenges the ALJ's decision to assign less than controlling weight to Dr. Vrabel's opinion. For the following reasons, Plaintiff's arguments lack merit.

It is well-established that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is

5

(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).

Here, the ALJ did not err in assigning less than controlling weight to Dr. Vrabel's opinion, as he provided good reasons for doing so. Plaintiff argues that the ALJ "virtually ignored" Dr. Vrabel's Medical Source Statement findings and failed to mention the report when addressing the weight given to opinion evidence, but a reading of the ALJ's opinion contradicts Plaintiff's allegations. In his opinion, the ALJ expressly acknowledged and cited to Dr. Vrabel's April 26, 2010 Medical Source Statement in his discussion of medical opinion evidence. (Tr. 28, 603-04). However, the ALJ chose not to give the findings in the report controlling weight because they were inconsistent with other evidence of record. (Tr. 28). To support the decision, the ALJ indicated that Dr. Vrabel's findings conflicted with Plaintiff's reported activities of daily living, which the ALJ set forth in his opinion. (*Id.*). For example, although Dr. Vrabel found Plaintiff's ability to deal with the public was "significantly limited," the ALJ observed that Feigenbaum admitted he rides the bus and talks with neighbors. (Tr. 27, 50, 498, 603). Dr. Vrabel also found Plaintiff was significantly limited in his ability to function independently in a work setting without special supervision. (Tr. 603). Nonetheless, the ALJ recounted that when

6

Plaintiff sought new housing, Plaintiff indicated that he would prefer living in an independent apartment rather than a group home. (Tr. 24, 471). Plaintiff also reported living by himself, and that he could independently cook, clean, and shop. (Tr. 24, 552, 661). Thus, a comparison between Plaintiff's daily life and Dr. Vrabel's conclusions indicates that Dr. Vrabel's assessment was inaccurate and lacked full support in the evidence. The inconsistencies between Dr. Vrabel's opinion and Plaintiff's daily life constitute satisfactory reasons for the ALJ's decision to give less than controlling weight to Dr. Vrabel's opinion.

Even assuming the ALJ's justifications are not sufficient to comply with the "good reasons" rule, the ALJ's error would be harmless. When an ALJ does not give good reasons for rejecting the opinion of a treating physician, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (*citing Wilson*, 378 F.3d at 547). A *de minimis* violation may occur "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (*quoting Wilson*, 378 F.3d at 547)). An ALJ may meet the goal of the good reasons requirement if she indirectly attacks both the supportability of the treating physician's opinions and the consistency of those opinions with the rest of the record evidence. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). The ALJ may implicitly provide sufficient reasons for not giving a treating physician's opinions controlling weight. *Id.* at 472. For example, in *Nelson v. Commissioner of Social Security,* the Sixth Circuit found that the ALJ failed to give good reasons for giving the opinions of two treating physicians little weight. *Id.* Nevertheless, the ALJ's analysis of the record evidence, which included other opinion evidence contrary to the treating

7

physicians' opinions, adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency. *Id.*

Here, the analysis of Plaintiff's medical records that the ALJ provided just before discussing Dr. Vrabel's opinion supports the ALJ's conclusion that Plaintiff—though he suffers from limitations as the ALJ accounted for in the RFC—is not as limited as Dr. Vrabel opined. For example, the ALJ noted that upon discharged from North Coast Behavioral in 2007 where Feigenbaum was treated for thoughts of suicide and bipolar disorder, Vincente Luna, M.D., found notable improvement and stability with treatment and medication, as reflected by discharge notes and the Global Assessment of Functioning ("GAF") score[2] the doctor assigned, which was considerably higher than Plaintiff's admission GAF score. (Tr. 27, 285-86). The ALJ also described opinion evidence from one of Plaintiff's psychiatrists at Recovery Resources, Kathleen Clegg, M.D. (Tr. 27, 407-09). In December 2008, Dr. Clegg found that Plaintiff showed improvement with treatment and had "good functioning as long as his mood is stable." (*Id.*). This functioning included, for example, the abilities to remember, understand, and follow directions; maintain attention; and deal with pressures involved in simple and routine tasks. (Tr. 408). Supporting Dr. Clegg's findings, ALJ referred to treatment notes which described Plaintiff's mood as being stable, and the ALJ further explained that medical evidence did not reflect a change in mental status following Dr. Clegg's assessment.[3] (Tr. 27, 697). Thus, Dr. Clegg's findings were contrary Dr. Vrabel's opinion that Plaintiff was significantly limited in a

---

[2] The Global Assessment Functioning score rates "overall psychological functioning" on a scale of 0 to 100, with a score of 100 indicating "superior functioning." *Ladwig v. Comm'r of Soc. Sec.*, 39 F. App'x 971, 976 n.5 (6th Cir. 2002) (*citing* American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

[3] Though one treatment note from January 2011 includes a note of "mood fluctuation"(Tr. 672), the other treatment notes the ALJ references from the end of 2010, all indicate that Plaintiff's mood was "ok." (Tr. 673-74). Plaintiff cites to no medical records showing significant changes in his mental health following Dr. Clegg's assessment.

range of skills related to functioning in the workplace. (Tr. 603).  The ALJ also relied upon state agency consultative examiner Karen Terry, Ph.D., who opined that Plaintiff had no limitations in understanding, remembering, carrying out simple job instructions, which undermined Dr. Vrabel's finding of moderate limitations in these areas. (Tr. 27, 445, 604)   As a result, the ALJ's opinion indirectly attacked the supportability of Dr. Vrabel's opinion in a manner that adequately meets the mandates of the treating source rule.

Plaintiff argues that treatment records from Murtis Taylor, where Dr. Vrabel treated Plaintiff, support Dr. Vrabel's Medical Source Statement.  Additionally, Feigenbaum points to state agency consultative reviewer Joan Williams, Ph.D., finding marked limitations in activities of daily living, and Dr. Terry observing marked limitations in dealing with the general public. Plaintiff implies this medical evidence, too, supports Dr. Vrabel's opinions. (Tr. 257, 446). These assertions, even if true, are unavailing.  On review, it is the Court's responsibility to determine whether there is substantial evidence in the record to support the Commissioner's decision. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009).  Even if there is evidence supporting the opposite conclusion, the undersigned must defer to the ALJ's finding if it is supported by substantial evidence. *Id*.  Because substantial evidence supports the ALJ's treating source analysis, Plaintiff's first assignment of error does not present a basis for remand.

### B.  The ALJ's Mental Residual Functional Capacity Finding

Feigenbaum also alleges that the ALJ erred in failing to incorporate into the residual functional capacity ("RFC") finding various mental functional limitations from medical sources of record.  Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities

9

despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. §§ 404.1545, 416.945; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578, (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1527(e)(1)). Thus, it is ultimately the ALJ's responsibility to analyze the medical opinion evidence and determine Plaintiff's RFC. While there may be evidence supporting a more restrictive RFC assessment, the ALJ's ruling must be upheld where adequate evidence supports it. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Here, Plaintiff begins by challenging the ALJ's decision with respect to state agency reviewer Dr. Terry. Dr. Terry completed a Mental Residual Functional Capacity Assessment ("MRFCA") form for Plaintiff in January 2009. (Tr. 445-47). Plaintiff maintains that the ALJ reported fully accepting the doctor's opinion, but failed to recognize that the doctor assessed marked limitations in interacting with the general public. (Tr. 27). Though it was inaccurate for the ALJ to write that Dr. Terry's opinion was "accepted fully," Plaintiff's allegation of error does not warrant remand.

If a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Social Security Ruling 96–8p states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). In the present case, the ALJ's decision indicated why the controlling RFC does not fully account for

Dr. Terry's limitations regarding public interaction, which the doctor described in Sections I and III of the MRFCA form.  Under Section I, Dr. Terry listed marked limitations in interacting with the public, while in Section III, Dr. Terry suggested that Plaintiff would "work best in settings where . . . he is not made to work with the general public." (Tr. 445, 447).  The ALJ expressly questioned Dr. Terry's finding of marked limitations in a public setting, based on Plaintiff's admission that he is able to take public transportation. (Tr. 27).  Within the same paragraph, the ALJ also stated that Plaintiff talked with his neighbors. (*Id.*).  Given that conflicting evidence in the record existed, the ALJ reasonably rejected Dr. Terry's stringent finding regarding Plaintiff's ability to interact with the public.  Because the ALJ explained why this aspect of Dr. Terry's opinion was rejected, the ALJ's remark about fully adopting such opinion does not constitute reversible error.[4]  The undersigned also notes that the ALJ recognized Plaintiff suffered from limitations in the area of public interaction.  Accordingly, the RFC limited Plaintiff to jobs where there would be no more than infrequent interaction with the public, meaning that Plaintiff would not have job duties that require such interaction on a daily basis. (Tr. 26).

Similarly, Plaintiff questions the ALJ's treatment of Dr. Clegg, one of Plaintiff's psychiatrists at Recovery Resources.  Feigenbaum maintains that the ALJ attributed

---

[4] Additionally, as Defendant correctly observes, Dr. Terry's finding of marked limitations was noted in within Section I of the MRFCA form, and, as a result, the ALJ was not required to adopt the limitation. Section I of the form was titled "Summary Conclusions." This Court has previously determined that an ALJ is not obligated to include a doctor's findings contained within Section I of the MRFCA in the ALJ's RFC assessment. *Velez v. Comm'r of Soc. Sec.*, No. 1:09-CV-0715, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010) ("In general . . . the ALJ is not required to include the findings in Section I in formulating residual functional capacity.") *R&R adopted* 2010 WL 1487729; *see Earls v. Comm'r of Soc. Sec.*, No. 1:09-CV-1465, 2011 WL 3652435, at *5 (N.D. Ohio Aug. 19, 2011).  The agency's Program Operations Manual System ("POMS") explains that "Section I of the MRFCA is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  POMS DI 24510.060(B)(2)(a) (available at https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited Jan. 14, 2014)).  Section III of the MRFCA, titled "Functional Capacity Assessment" is the "actual mental RFC assessment . . . explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  *Id*. at (B)(4)(a).

"considerable" weight to Dr. Clegg's opinion, but erred by failing to acknowledge that the doctor reported Feigenbaum displayed a very restricted affect and was "decreased" in abilities relating to social interaction. (Tr. 408). It is well established that for an ALJ's decision to stand, an ALJ need not discuss each and every piece of evidence in the record. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Thus, the ALJ's failure to expressly note Dr. Clegg's mere observation of a restricted affect does not constitute reversible error. Plaintiff provides no evidence suggesting that the ALJ failed in his duty to conduct a thorough review of the record. Furthermore, the ALJ's failure to analyze Dr. Clegg's opinion that Plaintiff had "decreased" abilities in social interaction is not error, because the ALJ's RFC is consistent with Dr. Clegg's finding. In the RFC, the ALJ limited Plaintiff to jobs where interaction with co-workers would be superficial and interaction with the public was no more than infrequent. Plaintiff points to no case law showing that the ALJ's RFC failed to accommodate Dr. Clegg's finding. Accordingly, the ALJ's RFC is not inconsistent with Dr. Clegg's opinion, because the ALJ sufficiently accounted for any relevant limitation.

Alternatively, Plaintiff argues that Dr. Clegg's opinion was not worthy of "considerable weight," as the ALJ concluded, because Dr. Clegg issued her opinion in December 2008, approximately two years prior to the hearing. Feigenbaum's argument lacks merit. Notably, when formulating the RFC, the ALJ did not base his determination solely on Dr. Clegg's opinion, but instead relied on additional medical sources. In addition, the ALJ's discussion of medical evidence of record that arose after Dr. Clegg's opinion supports his reliance on her report, even though it was issued earlier in the alleged period of disability. (Tr. 27). In particular, the ALJ noted that some of Dr. Vrabel's subsequent 2009 treatment reports showed improvement (Tr. 27, 459-61), and psychiatric treatment notes during the end of 2010 indicated that

12

Feigenbaum's mood was stable. (Tr. 27, 672-73). Plaintiff does not cite to medical records showing significant alterations in his mental status after Dr. Clegg's assessment. Accordingly, Plaintiff's allegation of error is not well taken.

Plaintiff also argues that the ALJ erred in his treatment of state agency reviewing physician Dr. Williams. Specifically, Plaintiff takes issue with the ALJ's failure to credit Dr. Williams' finding of marked limitations in activities of daily living. (Tr. 257). Plaintiff's argument as to Dr. Williams is without merit. Although the ALJ did not discuss Dr. Williams' report, the ALJ's opinion is clear as to why this limitation was rejected. The ALJ noted that Plaintiff reported living alone and being capable of self-care. (Tr. 24). Further, Plaintiff admitted to such activities as riding the bus and reading the paper. (Tr. 27). As a result, the ALJ reasonably discredited Dr. Williams' opinion.

Finally, Feigenbaum argues that by rejecting the above cited limitations from Drs. Terry, Clegg, Williams, and Vrabel, the ALJ selectively accepted only those findings which supported a denial of benefits, while rejecting those that did not. It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (*citing Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010) (citation omitted)). However, it is the ALJ's duty to resolve any inconsistencies in the evidence, and the ALJ does not act improperly merely by resolving some inconsistencies unfavorably to a claimant's position. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). As explained earlier in this opinion, the ALJ's decision shows that the limitations Plaintiff points to were inconsistent with other medical opinion evidence, as well as, Plaintiff's testimony and admissions.

Accordingly, the ALJ did not ignore evidence that supported a finding of disability, but properly conducted his duty to weigh the relevant evidence and determine Plaintiff's RFC.

Further, Feigenbaum contends that the ALJ's determination is in error because it is based upon the exercise of diagnostic expertise which the law does not recognize he independently possesses.  While it is true that "the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (*citing* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).  Furthermore, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Id.*  Here, the ALJ did not improperly supplant the opinions of medical sources of record when he determined Plaintiff's RFC.  Where the ALJ did not fully incorporate the opinions into the RFC, the ALJ pointed to evidence to support his conclusions.  In addition, the mental RFC that the ALJ ultimately assigned largely reflects that RFC suggested by Dr. Terry.  As a result, the Court cannot say that the ALJ exercised independent diagnostic expertise in formulating his opinion.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: January 17, 2014.